**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CEDRIC BROWN, | : | |
| | : | CIVIL ACTION NO. 10-8 (MLC) |
| Plaintiff, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | |
| LIFESTYLES, INC., et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

CEDRIC BROWN, Plaintiff pro se, # 3207685
Monmouth County Correctional Institution
1 Waterworks Road, Freehold, New Jersey 07728

**COOPER, District Judge**

   Plaintiff, Cedric Brown, a state inmate confined at Monmouth County Correctional Institution ("MCCI") in Freehold, New Jersey, when he submitted the Complaint, seeks to bring this action in forma pauperis.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

   The Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the

reasons set forth below, the Court concludes that the Complaint should be dismissed.

## I.   BACKGROUND

Brown brings this civil action under 42 U.S.C. § 1983 against the defendants, Lifestyles, Inc., Monmouth County Jail, Correct Care Solutions, and the Monmouth County Board of Chosen Freeholders.  (Complaint, Caption, ¶¶ 4b and 4c).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of Brown's allegations.

Brown alleges that, on June 30, 2009, he was working out in the weight room at MCCI.  Brown was using the "lat" machine.  As he was pulling down the bar behind his neck, the cable popped and the bar hit Brown in his neck and upper back.  Brown states that he was dazed and fell to the floor, where he lay for twenty minutes, fading in and out visually.  The MCCI medical staff arrived at the scene and placed a brace on Brown's neck.  Brown was then transported by stretcher to the medical department for examination and treatment.

On July 1, 2009, when Brown woke up, he complained about his neck, back and head hurting, and he was sent to the medical department.  He received a shot in his left arm and two pills.  The next day, Brown asked to go to the medical department, but he was told that medication was coming around.  On July 3, 2009, he

went to a nurse for an x-ray.  Brown was told that nothing was fractured, and that he was just swollen and bruised.  He was prescribed Naprosyn and Flexeril twice a day for pain.

From July 4, 2009 through July 9, 2009, Brown continued to have pain and took the pain medications twice daily.  He claims that he had asked to see the doctor but was refused until his prescription ran out.  On July 10, 2009, Brown was seen by a doctor and prescribed the same medications plus Tylenol-3.  Brown continued to take his medications for pain from July 11, 2009 through July 14, 2009.  On July 14, 2009, Brown was seen again by the doctor, who renewed his medication prescriptions.

Brown took his medications daily from July 15, 2009 through July 19, 2009.  On July 20, 2009, Brown was seen by the doctor, who renewed his prescriptions for Naprosyn and Tylenol-3 for seven days.  However, the nurse only gave Brown Naprosyn because she told him that taking both could damage his liver.  Accordingly, Brown continued taking two Naprosyns per day from July 21, 2009 through July 30, 2009.  Brown saw the doctor again on July 24, 2009, who extended his prescription.

On August 1, 2009, Brown complained about neck and back pain and headaches.  The nurse gave Brown five days of Tylenol because the Naprosyn prescription had expired, and the doctor was not in to renew it.  On August 3, 2009, Brown saw the doctor who gave him a new prescription for Mobic.  Brown was again referred to

the doctor on August 7, 2009, because he continued to have pain in his neck, back and head.

It appears that, on August 1, 2009, Brown filed a Tort Claim Notice with the State of New Jersey, seeking money damages for his injuries. On September 10, 2009, the tort claim was denied because Brown's claim was against a local public entity, and did not implicate any liability by the State of New Jersey.

Brown filed this action on or about January 4, 2010. The Complaint is silent as to the relief Brown seeks, although because it is labeled as a § 1983 action for damages, the Court will presume Brown is seeking an unspecified amount in damages to compensate him for his injuries.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Court must review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the

plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

    A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

    A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see Erickson, 551 U.S. at 93-94 (reviewing, in pro se prisoner civil rights action, whether complaint complied with pleading requirements of Rule 8(a)(2)).

    In Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the Supreme Court addressed whether Iqbal's civil rights complaint adequately

alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention, which, if true, violated his constitutional rights.  Id.  The Court examined Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief".  Fed.R.Civ.P. 8(a)(2).[1]  Citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

---

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed.R.Civ.P. 8(d).

Iqbal, 129 S.Ct. at 1949-50 (citations omitted).  The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948.  Iqbal emphasizes that a plaintiff must demonstrate that the allegations of the complaint are plausible.  Id. at 1949-50; see Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that applied to federal complaints before Twombly. Fowler, 578 F.3d at 210.[2]  Now, a district court must conduct the two-part analysis set forth in Iqbal:

---

[2] In Conley, a district court could summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

>First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-11.

The sufficiency of a pro se pleading still must be construed liberally in favor of a plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007)

### III.  SECTION 1983 ACTIONS

Brown brings this action pursuant to 42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Brown names the Monmouth County Jail as a defendant here. However, the claims asserted against Monmouth County Jail must be dismissed because it is not a "person" subject to liability under

§ 1983. See Grabow v. S. State Corr. Facility, 726 F.Supp. 537, 538-39 (D.N.J. 1989) (correctional facility is not a person under § 1983); Mitchell v. Chester County Farms Prison, 426 F.Supp. 271, 274 (E.D. Pa. 1976). The Court will now discuss the claims asserted by Brown as against the remaining named defendants.

### IV.   ANALYSIS

#### A.   Denial of Medical Care Claim

Brown alleges that he was denied proper medical care in violation of his constitutional rights. This claim is directed against defendants Correct Care Solutions and the Monmouth County Board of Chosen Freeholders. It is not clear from the Complaint whether Brown was a convicted prisoner or a pretrial detainee at the time of the incident.

For pretrial detainees, denial of medical care claims are considered under the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 243-45 (1983) (Due Process Clause of Fourteenth Amendment, rather than Eighth Amendment, controls issue of whether prison officials must provide medical care to those confined in jail awaiting trial); Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir. 2000); Monmouth County Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987); see Montgomery v. Ray, 145 Fed. Appx. 738, 740, (3d Cir. 2005) ("the

9

proper standard for examining such claims is the standard set forth in Bell v. Wolfish, ...; i.e. whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to adjudication of guilt") (citing Hubbard, 399 F.3d at 158).  In Hubbard, the Third Circuit clarified that the Eighth Amendment standard only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees.  399 F.3d at 165-67.

   Brown alleges that he was denied proper medical care for his injury after the bar from the weight machine fell on him.  But he sets forth a daily log of treatment he received immediately after his injury for a moth.  He confirms that x-rays were taken, he did not have any fractures, and that he received pain medications and follow-up care when his medications ran out.  Consequently, there are no allegations of inaction or refusal to treat Brown that could be deemed excessive in relation to any stated purpose of jail security and administration, and accordingly, a court can not infer that defendants' actions or inactions were intended as punishment and retaliation.  See Hubbard, 399 F.3d at 158-63; Newkirk v. Sheers, 834 F.Supp. 772, 781 (E.D. Pa. 1993).  Thus, this claim must be dismissed as against defendants Correct Care Solutions and the Monmouth County Board of Chosen Freeholders, for failure to state a cognizable claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

To the extent that Brown actually was a convicted prisoner at the time of the accident, the denial of medical care claim fails to satisfy the Eighth Amendment standard. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle, 429 U.S. at 103-04; Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999). To set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Estelle, 429 U.S. at 106; Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

The inmate must first demonstrate that the medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). A serious medical need is defined as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted); see Lanzaro, 834 F.2d at 347.

An inmate must also show that prison officials acted with deliberate indifference to the serious medical need.  See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that official knew of and disregarded excessive risk to inmate health or safety).  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Also, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

Deliberate indifference has been found where a prison official: (1) knows of a prisoner's need for medical treatment

but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197. Needless suffering resulting from denial of simple medical care, which does not serve any penological purpose, also violates the Eighth Amendment. Atkinson, 316 F.3d at 266; see Lanzaro, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White, 897 F.2d 103.

    Here, Brown fails to allege a serious medical need or any deliberate indifference by defendants. In fact, as set forth above, Brown received medical care and treatment immediately following his injury, and continually for a month thereafter. At best, Brown alleges a difference of opinion as to how he should have been treated, which does not amount to a constitutional deprivation. Indeed, a prisoner's subjective dissatisfaction with medical care does not in itself indicate deliberate indifference. Andrews, 95 F.Supp.2d at 228. Moreover, to the extent that Brown is second-guessing the doctor's diagnosis of his injury, and even if it is found that the doctor was mistaken as to the extent or kind of Brown's injuries, such claim sounds

only in negligence or medical malpractice, and thus, is not actionable under § 1983 as an Eighth Amendment violation.  See Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.  Therefore, any denial of medical care claim asserted under the Eighth Amendment must be dismissed with prejudice as against defendants Correct Care Solutions and the Monmouth County Board of Chosen Freeholders for failure to state a claim.

**B.	Claim Against Monmouth County Board of Chosen Freeholders**

Brown also alleges that the Monmouth County Board of Chosen Freeholders failed to properly maintain the gym equipment.  But where a defendant merely has failed to exercise due care in failing to prevent harm to an inmate, as alleged here, such negligence is insufficient to establish a violation of the Eighth or Fourteenth Amendment.  See Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Schwartz v. County of Montgomery, 843 F.Supp. 962 (E.D. Pa.), aff'd, 37 F.3d 1488 (3d Cir. 1994) (mere negligence insufficient to support § 1983 action for violation of Eighth or Fourteenth Amendments).

**C.	Claim Against Lifestyles, Inc.**

Brown asserts a products liability or defective equipment claim against Lifestyles, Inc., the company that sold, leased or contracted with the Monmouth County Jail for provision and maintenance of gym equipment.  Specifically, Brown alleges that the company had been at Monmouth County Jail on the day before

Brown's accident, replacing the weights and cables on the machine that injured him.

Dismissal of Brown's federal claims leaves open the question whether Brown may proceed in federal court on his product liability claim against defendant Lifestyles, Inc. Brown may do so only if there is federal jurisdiction and, under the facts of the case, there is federal jurisdiction only if plaintiff and defendant are citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. Under § 1332(c), a corporation is deemed to be a citizen of the state in which it is incorporated and the state in which it has its principal place of business. There must be complete diversity, i.e., each plaintiff must be a citizen of a different state from each defendant. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365 (1978).

The Complaint fails to state anything about the citizenship of the defendant Lifestyles, Inc. Brown fails to provide any information as to his domicile, although he is confined in the State of New Jersey. Therefore, the Complaint does not assert complete diversity between plaintiff and defendant, Lifestyles, Inc., to satisfy § 1332(a). Brown also fails to alleges that his matter in controversy exceeds the sum or value of $75,000.

As the Complaint fails to assert jurisdiction under Section 1332(a), and there is no federal question jurisdiction over any

15

state law claim that may be construed from the Complaint against this defendant, or any other named defendants herein, pursuant to 28 U.S.C. § 1331, this Court will dismiss the Complaint without prejudice for failure to allege sufficient facts to establish federal jurisdiction.  The dismissal, pursuant to 28 U.S.C. § 1915(e), is without prejudice to plaintiff's right to either: (1) seek to reopen this action by filing an amended complaint in this Court within 30 days demonstrating that there is diversity of citizenship between the parties, and the amount in controversy exceeds the sum of $75,000, or (2) bring an action asserting the state law claims against Lifestyles, Inc., in state court within 30 days regardless of citizenship.  See 28 U.S.C. § 1367(d).

## V.  CONCLUSION

Brown's claims asserting denial of medical care and negligence (both medical negligence and negligent maintenance of the gym equipment) in violation of the Eighth and/or Fourteenth Amendment, will be dismissed with prejudice, in their entirety, as against named defendants Correct Care Solutions and the Monmouth County Board of Chosen Freeholders pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.  Further, the Complaint will be dismissed with prejudice, in its entirety, as against defendant, Monmouth County Jail, for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Brown's claim against defendant Lifestyles, Inc., asserting product liability or defective equipment, will be dismissed for failure to assert facts to support jurisdiction under 28 U.S.C. § 1332(a) or federal question jurisdiction under 28 U.S.C. § 1331, but without prejudice to either — in the manner directed above — seek to reopen this action insofar as asserted against Lifestyles, Inc., in this Court, or bring an action against Lifestyles, Inc., in state court.  An appropriate order and judgment follows.

                                        s/Mary L. Cooper
                                        **MARY L. COOPER**
                                        United States District Judge

Dated:    May 26, 2010